IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TENESHA CLEMONS                                                              PLAINTIFF

V.                              CASE NO. 1:17-CV-91-BD

SOCIAL SECURITY ADMINSTRATION                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tenesha Clemons[1] has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income. Both parties have submitted appeal briefs, and the case is ready for decision.[2]

I.      **Background:**

In 2010, Ms. Clemons alleged that she became limited in her ability to work due to a left hand injury, acid reflux, anxiety, and learning disabilities. (SSA record at 111-118, 135) After a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision denying Ms. Clemons's claims. (*Id*. at 9-27) In March of 2013, the Appeals Council denied review, and Ms. Clemons appealed. (*Id*. at 1-6)

After this Court affirmed the Commissioner's decision, Ms. Clemons appealed to the Eighth Circuit Court of Appeals. *Reed v. Colvin*, 779 F.3d 725 (2015). The Circuit

---

[1] At the time Ms. Clemons filed her disability applications, her name was Tenesha Reed.

[2] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket entry #3)

Court held that there was evidence showing that Ms. Clemons's intellectual disability[3] initially manifested itself before age 22. The Court also noted that Ms. Clemons met the criterion of additional and significant work-related limitations of function from a physical or mental impairment based on the ALJ's determination that her anxiety disorder, history of hand surgery, and morbid obesity were severe impairments. *Reed*, 779 F.3d at 727. The Court found that the ALJ had not adequately reconciled Ms. Clemons's 2007 Wechsler Adult Intelligence Scale – III ("WAIS") test results with her 2010 evaluation where the same consulting psychologist estimated, without testing, that Ms. Clemons's level of intellectual functioning was at a "borderline/upper mentally handicapped" level. The Eighth Circuit reversed and remanded the case to the Commissioner, "for further development of the record on the validity of the 2007 test results." *Id*.

On remand, after a second hearing, the ALJ concluded that Ms. Clemons had not been under a disability within the meaning of the Social Security Act ("the Act") at any time since February 26, 2010, the alleged disability onset date. (*Id*. at 402) The Appeals Council denied a request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 379-83) Ms. Clemons filed her complaint initiating this appeal.  (#2)

Ms. Clemons was 36 years old at the time of the second hearing.  (SSA record at 412) She completed 10th grade in special education classes and did not return to school when she was asked to repeat 11th grade. (37, 412-13) She studied for her GED, but

---

[3] Listing 12.05's title has changed from "mental retardation," to "intellectual disability." 78 Fed. Reg, 46499 (Aug. 1, 2013).

2

never obtained it. (37, 412-13) At the time of the hearing, she lived by herself. Her mother paid her rent in exchange for a "little cleaning." (42, 413) Her past work was primarily as a housekeeper. (38-39, 416, 419-21)

## II. The ALJ's Decision:

The ALJ determined that Ms. Clemons had not engaged in substantial gainful activity since February 26, 2010, and that her borderline intellectual functioning, anxiety, obesity, and history of left-hand fracture (status-post open reduction with internal fixation) were severe impairments; but, she did not have an impairment or combination of impairments that met a listed impairment. (*Id*. at 390-91) He further found that Ms. Clemons's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible because they were not consistent with the medical evidence. (*Id*. at 400)

Based on these findings, the ALJ concluded that, during the relevant time period, Ms. Clemons retained the residual functional capacity ("RFC") for light work where interpersonal contact is limited (interpersonal contact requiring little interaction such as answering simple questions, responding appropriately to supervisors and co-workers, and interaction with the public is infrequent and not considered to be an essential job duty); complexity of tasks can be learned by demonstration or repetition within 30 days, few variables, little judgment; supervision required is simple direct and concrete. (*Id*. at 393-400)

The ALJ found that Ms. Clemons could perform her past relevant work as a housekeeper. (*Id*. at 400) Alternatively, the ALJ relied on the testimony of a Vocational

Expert ("VE") to find at step 5 to find that, based on Ms. Clemons's age, education, work experience and RFC, she was capable of performing work in the national economy as a cleaner in housekeeping and machine operator, both of which are classified as light, unskilled work, with an SVP of 2. (*Id*. at 401) The ALJ determined, therefore, that Ms. Clemons was not disabled. (*Id*. at 402)

### III.   Discussion:

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record and free of legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018); see also 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Id*. (citing *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (other citation omitted). Substantial evidence on the record *as a whole* requires a court to take into account record evidence that both supports and detracts from the ALJ's decision. *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 557 (8th Cir. 2018) (citation omitted). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (citations omitted).

#### A. Issues on Appeal

Ms. Clemons claims that the ALJ erred at step three of the sequential process in finding that she did not meet listing 12.05C for mental retardation. She asserts that the ALJ should have found, based on the combination of intellectual disability, anxiety disorder (NOS), the residuals of a left-hand fracture, and morbid obesity that she was

4

unable to work. She also argues that the ALJ's decision does not comply with the Eighth Circuit's remand order.

The Commissioner responds that there is substantial evidence to support the ALJ's finding that she did not meet Listing 12.05C, and that the ALJ fully developed the issue of Ms. Clemons's intellectual functioning by ordering another consultative exam with IQ testing.

### B. Listing 12.05C

To meet Listing 12.05C, a claimant must show: (1) significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (*i.e.* before age 22); (2) a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05C; see also *Maresh v. Barnhart*, 438 F.3d 897, 898-899.[4] The issue here is whether Ms. Clemons's IQ scores met the requirements of Listing 12.05C. *See Reed*, 779 F.3d at 727 (finding that Ms. Clemons met the other two criteria to establish Listing 12.05C).

### 1. Medical Records

Kenneth Hobby, Ph.D., performed a consultative psychological evaluation of Ms. Clemons in 2007. He reported her daily activities included preparing meals that did not

---

[4]New rules for evaluating the medical criteria for mental disorders became effective on January 17, 2017, but the new rules apply to new or pending claims filed on or after the effective date. 81 Fed. Reg. 66138 and n.1. Because Ms. Clemons's case was remanded in May, 2016, the Court will apply the old rules to evaluate her claim.

involve cooking, watching television, coloring in a coloring book, and working puzzles. (*Id*. at 201-02) She reported that learning to read and do math were a problem for her, and she had repeated grades in school. She was in special education classes from 9th to 11th grade. (*Id*. at 202)

Dr. Hobby administered the WAIS-III test. Ms. Clemons had a verbal IQ of 68, a performance IQ of 67, and a full-scale IQ of 65, which placed her in the mild-mentally retarded range. (*Id*. at 207-08) Dr. Hobby concluded that, "[g]enerally the test results are consistent with the level of adaptive behavior, work history, and background information . . . . She appears to have the intellectual ability to learn some simple repetitive skilled work-like tasks." (*Id*. at 208) There was no evidence of malingering. (*Id*. at 208) He diagnosed mild mental retardation with a current and highest GAF of 51-60. (*Id*. at 209) He concluded that her mental impairment did have some effect on an independent level of self-care. Her capacity to cope with the typical mental/cognitive demands of basic work-like tasks was limited to understanding, carrying out, and remembering very basic work-like tasks. Some limitation was observed in her ability to attend and sustain concentration on basic work-like tasks due to her memory level. (*Id*. at 211)

On December 20, 2010, Dr. Hobby performed another mental status evaluation of Ms. Clemons, but he did not perform any additional IQ testing. He noted that Ms. Clemons's anxiety had increased and had affected her ability to work and be around other people. (*Id*. at 280) She had not been sought inpatient or outpatient treatment for her emotional or psychiatric problems, and she had not been taking medication. (*Id*. at 281) He estimated her IQ to be at the borderline/upper mentally handicapped intellectual level,

6

noting that she "appear[ed] to be functioning within or near the mentally retarded range." (*Id*. at 286) He diagnosed anxiety disorder (mild with panic features by history) and borderline/upper mild intellectually handicapped functioning. (*Id*. at 287) He found her capacity to complete work-like tasks within an acceptable time-frame was "slightly slower than normal." (*Id*. at 289) He found no malingering or symptom exaggeration. (*Id*. at 287-89)

On March 12, 2016, following the Eighth Circuit's remand of her case, Ms. Clemons had a third consultative mental diagnostic evaluation and intellectual assessment with Dr. Hobby. Dr. Hobby's 2016 report indicates that the agency did not provide him with any background medical information on Ms. Clemons. (*Id*. at 789)

Dr. Hobby administered the WAIS-IV test. Ms. Clemons scored 80 on the verbal, 79 on perceptual reasoning, and 74 on working memory. She had processing speed of 76, and a full-scale IQ of 73, placing her in the borderline range of intellectual functioning and suggesting that she could learn some simple, semi-skilled work-like tasks. (*Id*. at 797-98) Dr. Hobby considered the results of the test to be valid and reliable. (*Id*. at 799)

Dr. Hobby diagnosed borderline intellectual functioning, as well as unspecified anxiety disorder with panic, social anxiety, and reactive features (currently stabilized with medications). (*Id*. at 800) He concluded: "This individual would probably respond adequately to work pressure in a cognitive appropriate work-like setting where she didn't have to work around a lot of people." (*Id*. at 802) "She should be able to mentally persist on appropriate skill level work-like tasks for at least part of an 8-hour day." (*Id*. at 802) He noted only mild restrictions in her ability to understand and remember complex

7

instructions, carry out complex instructions, make judgments on complex work-related decisions, and to interact appropriately with the public. (*Id*. at 808-09)

2. Failure to Comply with the Eighth Circuit's Remand Order

The ALJ considered whether Ms. Clemons met the listing for 12.05C and concluded that she did not meet the listing "because she did not have a valid verbal, performance, or full-scale IQ of 60 through 70 and physical or other mental impairment imposing an additional and significant work-related limitation of function." (*Id*. at 393) The ALJ did not address Ms. Clemons's 2007 IQ test results in reaching his conclusion. (*Id*. at 393) He concluded that "[o]verall the evidence shows that the claimant is functioning at a range consistent with the most recent testing dated March 12, 2016." (*Id*. at 393) To support this assertion, he pointed only to the "consultative exams in December 20, 2010 and March 12, 2016" that were "consistent with the claimant's past work" as a housekeeper, which was classified by the vocational expert as unskilled work performed at the light level. (*Id*. at 393)

The ALJ relied on Dr. Hobby's 2016 consulting opinion to find that Ms. Clemons did not meet Listing 12.05C. He did not address the Eighth Circuit's reason for remanding the case, however, which was to develop the record on the *validity of the 2007 test results*. *Reed*, 779 F.3d at 727. Dr. Hobby's 2016 opinion did not address the validity of the 2007 test results compared to the 2016 test results, presumably because the Commissioner did not provide Dr. Hobby with Ms. Clemons's relevant background information.

8

The Commissioner's regulations require that, if ordering a consultative examination, the Commissioner will, "give the examiner any necessary background information about your condition." 20 C.F.R. §416.917. Courts have held that necessary, background information includes medical records that provide the consultative examiner with the claimant's medical history, *objective testing*, and hospitalization records necessary to assist the consultant in determining the severity of the claimant's impairments. *See e.g.*, *Brantley v. Comm'r of Soc. Sec.*, 637 Fed. Appx. 888, 894-95 (6th Cir. 2016) (pointing to the Commissioner's own Program Operations Manual System ("POMS") that instructs employees to provide consultative examiners with relevant medical evidence including medical opinions and the Commissioner's Hearings, Appeals, and Litigation Law Manual ("HALLEX") that instructs staff to supplement a request for a consultative examination with a medical exhibits folder that is sent to the consultative examiner for review); *see also McCarter v. Berryhill*, No. 3:16-CV-385-CCS, 2018 WL 327765 at 7-8 (E.D. Tenn. Jan. 8 2018); *Kelly Brian Peacock v. Comm'r Soc. Sec.*, No. CV-17-523-PHX-BSB, 2018 WL 2753151 at 5-7 (D. Ariz. June 8, 2018).

A federal agency, such as the Social Security Administration, is bound to follow its regulations. *See Carter v. Sullivan,* 909 F.2d 1201, 1202 (8th Cir. 1990) (per curium) ("an agency's failure to follow its own binding regulations is a reversible abuse of discretion.") (citing *City of Sioux City v. Western Area Power Admin.,* 793 F.2d 181, 182 (8th Cir. 1986); *Suciu v. Immigration & Naturalization Serv.,* 755 F.2d 127, 129 (8th Cir. 1985)); *see also United States v. Nixon,* 418 U.S. 683, 695–96 (1974) (concluding that a federal agency is bound to follow its own regulations); *Vega v. Colvin*, 128 F. Supp. 3d

9

1121, 1127 (N.D. Iowa 2015); *Reff v. Astrue*, No. CIV. 07-2515PAM/JSM, 2008 WL 4277713, at 9 (D. Minn. 2008). The SSA erred by not following its own regulations and by failing to provide Dr. Hobby with the background information necessary for him to address the 2007 test results, as required by the Eighth Circuit's remand.

### IV.     Conclusion:

After considering the record as a whole, the Court concludes the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed and remanded for action consistent with the opinion. This a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 8th day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE